J-A12045-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JEFFREY LYNN RAKER | : | |
| | : | |
| Appellant | : | No. 1317 MDA 2020 |

Appeal from the Judgment of Sentence Entered July 30, 2020
In the Court of Common Pleas of Bradford County Criminal Division at
No(s): CP-08-CR-0000721-2019

BEFORE:  LAZARUS, J., STABILE, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:          **FILED: JUNE 24, 2021**

Jeffrey Lynn Raker ("Raker") appeals from the judgment of sentence imposed following his convictions of two counts of driving under the influence of a controlled substance ("DUI"), and one count of possession of drug paraphernalia.[1]  We affirm.

On August 29, 2019, at approximately 11:00 p.m., Pennsylvania State Police Trooper Luke Geiger ("Trooper Geiger") was dispatched based on a report of a suspicious vehicle that was parked off the side of Southside Road, a rural, paved public highway located in Bradford County, Pennsylvania.  The dispatch detailed that the suspicious vehicle had been parked near the entrance of an oil and gas well pad for several hours, with its brake lights and

---

[1] 75 Pa.C.S.A. § 3802(d)(1)(ii), (iii); 35 P.S. § 780-113(a)(32).

headlights activated. Trooper Geiger traveled to the scene, and approached the vehicle from the western, oncoming lane. Trooper Geiger activated his dashboard camera before he approached the vehicle. Trooper Geiger's dashboard camera depicted the vehicle, a black Hyundai Tucson, parked in the easement of Southside Road.[2] Trooper Geiger confirmed that the black Hyundai was parallel to Southside Road, facing east, and its brake lights and headlights were activated.

Trooper Geiger performed a U-turn, activated his lights and sirens, pulled behind the black Hyundai, and exited his marked cruiser. Trooper Geiger observed that the black Hyundai was stopped approximately 10 feet away from the edge of the roadway. Trooper Geiger approached the driver-side window, observed that the vehicle was in drive, and the driver, later identified as Raker, had his foot on the brake pedal. During their conversation, Raker told Trooper Geiger that he was not feeling well, and had stopped there to get cellular service. Trooper Geiger detected a foul chemical smell, and, shortly thereafter, Trooper Geiger asked Raker to exit the vehicle; Raker complied. Additionally, Raker consented to a search of his vehicle, which yielded a glass smoking device under the passenger seat.

---

[2] This portion of Southside Road includes an entrance to a private road, which leads to an oil and gas well pad. Southside Road, including its easement, is approximately 60 feet wide, or 30 feet on each side from the center line. The roadway extends approximately 17½ feet from the center line, and the easement extends an additional 12½ feet from the edge of the road.

Based upon his observations and the smoking device, Trooper Geiger conducted field sobriety tests, after which Trooper Geiger arrested Raker and placed him in the rear of his police cruiser. At this point, upon Raker's request, Trooper Geiger moved the black Hyundai away from the roadway. Subsequently, Trooper Geiger transported Raker to Towanda Memorial Hospital for a blood draw. The blood-draw results revealed that Raker's blood contained amphetamine and methamphetamine.

On August 30, 2019, the Commonwealth charged Raker with, *inter alia*, the above-mentioned offenses. On July 6, 2020, Raker proceeded to a bench trial, after which the trial court found Raker guilty of the above-mentioned offenses. On July 30, 2020, the trial court sentenced Raker in the aggregate to 72 hours to 6 months in prison, followed by 12 months of probation.

On August 2, 2020, Raker filed a Motion for Judgment of Acquittal, in which he challenged the sufficiency of the evidence regarding his DUI convictions. The Commonwealth filed a Response, and on October 7, 2020, the trial court issued an Order and Opinion denying Raker's Motion. Raker filed a timely Notice of Appeal[3] and court-ordered Pa.R.A.P. 1925(b) Concise Statement of errors complained of on appeal.

_____

[3] Raker purports to appeal from the trial court's October 7, 2020, Order denying his post-sentence Motion. However, in criminal matters, an appeal properly lies from the judgment of sentence. **See Commonwealth v. Shamberger**, 788 A.2d 408, 410 n.2 (Pa. Super. 2001) (*en banc*) (citation omitted).

Raker now raises the following issue for our review:

[Whether t]he [trial c]ourt erred in denying [Raker]'s Motion for Judgment of Acquittal on the [trial court]'s verdict of guilty on the charge [*sic*] of [DUI,] which was not supported by sufficient evidence since it was never established beyond a reasonable doubt that [Raker]'s vehicle was parked on a public highway or trafficway[?]

Brief for Appellant at VI.

Raker contends that the Commonwealth presented insufficient evidence that he was operating his vehicle on a public highway or trafficway, as required by 75 Pa.C.S.A. § 3802(d). Brief for Appellant at 8. Raker argues that his vehicle was parked beyond the easement of Southside Road. *Id.* at 8-9. In support of this claim, Raker directs this Court's attention to the video stills taken from Trooper Geiger's dash cam video, which Raker claims demonstrate that his vehicle was parked "to the right side of the utility poles[,] which would be on private property." *Id.* at 9, 12. Raker asserts that his vehicle left a "water spot" from the air conditioner, and that said "water spot" can be seen to the right of the utility poles as well. *Id.* at 9-10, 12. Additionally, Raker contends that the private road leading to the oil and gas well pad had various "no trespassing" and "private property" signs. *Id.* at 10-11. Raker argues that his case is analogous to **Commonwealth v. McFadden**, 547 A.2d 774

(Pa. Super. 1988) (plurality),[4] and, therefore, this Court must reverse his

conviction. *Id.*

We adhere to the following standard of review:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weight the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Vargas*, 108 A.3d 858, 867-68 (Pa. Super. 2014) (*en

banc*) (quotations and citations omitted).

The DUI statute, in relevant part, provides as follows:

**§ 3802. Driving under influence of alcohol or controlled substance.**

* * *

_____

[4] In **McFadden**, a plurality of this Court determined that the Commonwealth failed to prove that the road in question, a dead-end, private drive to a trailer park, was customarily open to vehicular traffic. **McFadden**, 547 A.2d at 776-77.

**(d) Controlled substances.--**An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:

(1) There is in the individual's blood any amount of a:

* * *

(ii) Schedule II or Schedule III controlled substance, as defined in The Controlled Substance, Drug, Device and Cosmetic Act, which has not been medically prescribed for the individual; or

(iii) metabolite of a substance under subparagraph … (ii).

75 Pa.C.S.A. § 3802(d)(1)(ii), (iii).

Thus, in order to demonstrate that a person violated the DUI law, the Commonwealth must produce sufficient evidence that the vehicle was operated on a public highway or trafficway. *See Commonwealth v. Zabierowsky*, 730 A.2d 987, 988-89 (Pa. Super. 1999) (stating that whether the subject vehicle was operated on a highway or trafficway of this Commonwealth is an essential elemental of the DUI statute). Regarding this requirement, the Motor Vehicle Code provides, in relevant part, as follows:

**§ 3101. Application of part**

**(a) General rule.**--Except as provided in subsection (b), the provisions of this part relating to the operation of vehicles refer exclusively to the operation of vehicles upon highways except where a different place is specifically referred to in a particular provision.

**(b) Serious traffic offenses.--**The provisions of … Chapter 38 (relating to driving after imbibing alcohol or utilizing drugs) shall apply upon highways and trafficways throughout this Commonwealth.

75 Pa.C.S.A. § 3101. Additionally, the Motor Vehicle Code provides the following definitions:

### § 102. Definitions

\* \* \*

"**Highway.**" The *entire width between the boundary lines of every way publicly maintained* when any part thereof is open to the use of the public for purposes of vehicular travel. The term includes a roadway open to the use of the public for vehicular travel. The term includes a roadway open to the use of the public for vehicular travel on grounds of a college or university or public or private school or public or historical park.

\* \* \*

"**Trafficway.**" The *entire width between property lines or other boundary lines* of every way or place of which any part is open to the public for purposes of vehicular travel as a matter of right or custom.

75 Pa.C.S.A. § 102 (emphasis added).

Here, in its Opinion,[5] the trial court determined that Raker was parked within the easement of Southside Road. **See** Trial Court Opinion, 10/7/20, at 2-3. In making this determination, the trial court relied upon Trooper Geiger's dash cam video, which depicted Raker's vehicle, parked, facing east along Southside Road. **See id.** (wherein the trial court stated that it had heard Trooper Geiger's testimony, and had viewed the dash cam video, which

---

[5] In its 1925(a) Opinion, the trial court incorporated its previous Opinions, dated March 10, 2020, and October 7, 2020, respectively, denying Raker's Motion for *Habeas Corpus* and Motion for Judgment of Acquittal, which raised the same claim that Raker now raises on appeal. **See** Trial Court Opinion, 12/8/20, at 1 (unnumbered).

supported its conclusion that Raker's vehicle was initially parked within the easement of Southside Road). Additionally, the trial court heard, and relied upon, testimony from Debbie Kolodziej ("Kolodziej"), the Administrative Director of the Bradford County Assessment Office. *Id.* at 2. Kolodziej testified that Southside Road, including its easement, is approximately 60 feet in width, and that the easement extends approximately 12½ feet beyond the edge of the roadway. *Id.* at 2; *see also* N.T. (Bench Trial), 7/6/20, at 10-15, 20-25. Kolodziej testified that, likewise, the 12½ foot easement extends equally onto the private driveway of the oil and gas well pad. *See* Trial Court Opinion, 10/7/20, at 2; *see also* N.T. (Bench Trial), 7/6/20, at 10-15, 20-25. The trial court determined that Kolodziej's testimony, coupled with the dash cam video from Trooper Geiger's vehicle and Trooper Geiger's testimony, demonstrated that Raker was parked in the easement of Southside Road. *See* Trial Court Opinion, 10/7/20, at 2-4.

Our review of the record confirms the trial court's determinations. Indeed, in addition to the above, the record reflects that Raker's vehicle was close enough to Southside Road that another driver could have struck the vehicle. *See* N.T. (Non-Jury Trial), 7/6/20, at 44-47, 82 (wherein Trooper Geiger testified that Raker's vehicle was "[w]ithin ten feet of the edge of the road[;]" Trooper Geiger expressed his concerns that another vehicle may strike the vehicle; and Raker had requested that Trooper Geiger move Raker's

vehicle further away from the road). Accordingly, Raker's claim lacks merit.[6]

*See Vargas*, *supra*; *see also Commonwealth v. Yaninas*, 722 A.2d 187, 189 (Pa. Super. 1998) (concluding that the Commonwealth presented sufficient evidence of DUI where the defendant, with a blood alcohol content of 0.14%, was parked on the berm of State Route 11).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/24/2021

---

[6] Moreover, Raker's reliance on *McFadden* is unavailing. In *McFaden*, this Court reasoned that intermittent drivers on a private road did not create the requisite customary public use to constitute a highway under section 102. *See McFadden*, 547 A.2d at 776-77. The facts in the instant case are readily distinguishable, as Raker was operating his vehicle on the easement of a public highway, not on a private road. *See also Commonwealth v. Ansell*, 143 A.3d 944, 950 n.5 (Pa. Super. 2016) (stating that *McFadden*, as a plurality decision, is not binding authority). Accordingly, *McFadden* is inapplicable to the instant case.